## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## EASTERN DIVISION

| | | |
|---|---|---|
| **RONALD DALE HEINING and**<br>**TYLER WADE HEINING,** | ) <br> ) <br> ) | |
| **Plaintiffs,** | ) <br> ) | |
| **v.** | ) <br> ) | **Case No.: 1:15-CV-1363-VEH** |
| **CITY OF ANNISTON, ALABAMA;**<br>**DON HOYT, individually and in his**<br>**official capacity; and DARYL**<br>**ABERNATHY, individually and in**<br>**his official capacity;** | ) <br> ) <br> ) <br> ) <br> ) | |
| **Defendants.** | ) <br> ) | |

## MEMORANDUM OPINION

## I.    INTRODUCTION AND PROCEDURAL HISTORY

Plaintiffs Ronald Dale Heining ("Ronald Heining") and his son, Tyler Wade

Heining ("Tyler Heining"), initiated this civil rights lawsuit on August 12, 2015,

against Defendants City of Anniston (the "City"), Don Hoyt ("City Manager

Hoyt") (sued both individually and in his official capacity as City Manager),

Robert J. Dean, Jr. ("City Public Works Director Dean") (sued both individually

and in his official capacity as Public Works Director for the City), and Daryl

Abernathy ("City Assistant Street Superintendent Abernathy") (sued both

individually and in his official capacity as Assistant Street Superintendent for the

City) (City Manager Hoyt, City Public Works Director Dean, and City Assistant Street Superintendent Abernathy are sometimes referred to collectively as the "Individual Defendants"). (Doc. 1). Plaintiffs filed a First Amended Complaint (Doc. 5) on August 26, 2015, pursuant to this court's Order Requiring Repleader (the "Repleader Order"). (Doc. 4). The First Amended Complaint contains sixteen causes of action–half of which allege federal claims and the other half of which assert state law claims.

## PLAINTIFFS' FEDERAL LAW CLAIMS

Specifically, Plaintiffs' federal claims are – with the exception of Count Eight – all constitutional claims by and through 42 U.S.C. § 1983. They are described with more particularity below.

- Count One (asserted against all Defendants and in all capacities) for unlawful seizure in violation of Plaintiffs' Fourth and Fourteenth Amendment rights. (Doc. 5 at 6-8 ¶¶ 26-36);

- Count Two (asserted against all Defendants and in all capacities) for malicious prosecution in violation of Plaintiffs' Fourth and Fourteenth Amendment rights. (*Id.* at 9-10 ¶¶ 37-44);

- Count Three (asserted against all Defendants and in all capacities) for abuse of process in violation of Plaintiffs' Fourth and Fourteenth Amendment

rights. (*Id.* at 10-12 ¶¶ 45-52);

- Count Four (asserted against all Defendants and in all capacities) for a non-specific deprivation of liberty in violation of Plaintiffs' Fifth and Fourteenth Amendment rights. (*Id.* at 12-14 ¶¶ 53-63);

- Count Five (asserted against all Defendants and in all capacities) for a non-specific deprivation of liberty in violation of Plaintiffs' Fifth and Fourteenth Amendment rights. (*Id.* at 15-17 ¶¶ 64-75);

- Count Six (asserted against all Defendants and in all capacities) for a non-specific deprivation of liberty in violation of Plaintiffs' Sixth and Fourteenth Amendment rights. (*Id.* at 17-19 ¶¶ 76-86);

- Count Seven (asserted against all Defendants and in all capacities) for a non-specific deprivation of liberty in violation of Plaintiffs' Sixth and Fourteenth Amendment rights. (*Id.* at 20-22 ¶¶ 87-97); and

- Count Eight (asserted against all Defendants and in all capacities) for conspiracy to commit constitutional violations brought pursuant to 42 U.S.C. § 1985. (*Id.* at 22-24 ¶¶ 98-108).

## PLAINTIFFS' STATE LAW CLAIMS

Plaintiffs' state law counts are as follows:

- Count Nine (asserted against all Defendants and in all capacities) for false

arrest and imprisonment. (*Id.* at 25-26 ¶¶ 109-113);

- Count Ten (asserted against all Defendants and in all capacities) for assault and battery. (*Id.* at 26-27 ¶¶ 114-118);

- Count Eleven (asserted against all Defendants and in all capacities) for malicious prosecution. (*Id.* at 27-28 ¶¶ 119-124);

- Count Twelve (asserted against all Defendants and in all capacities) for abuse of process. (*Id.* at 28-29 ¶¶ 125-130);

- Count Thirteen (asserted against all Defendants and in all capacities) for negligence. (*Id.* at 29-30 ¶¶ 131-136);

- Count Fourteen (asserted against all Defendants and in all capacities) for wantonness. (*Id.* at 30-31 ¶¶ 137-142);

- Count Fifteen (asserted against the City pursuant to Ala. Code § 11-47-190)[1] for neglectfulness. (*Id.* at 31-32 ¶¶ 143-146); and

- Count Sixteen (asserted against all Defendants and in all capacities) for conspiracy. (*Id.* at 32-33 ¶¶ 147-151).

---

[1] While boilerplate allegations within Count Fifteen indicate that this claim is brought against all Defendants (Doc. 5 at 31 ¶¶ 143-144), the title of such Count reflects that the City is the only intended Defendant. Additionally, Ala. Code § 11-47-190 is a municipal liability statute. *See id.* ("No city or town shall be liable for damages for injury done to or wrong suffered by any person or corporation, unless such injury or wrong was done or suffered through the neglect, carelessness, or unskillfulness of some agent, officer, or employee of the municipality engaged in work therefor and while acting in the line of his or her duty, . . . .").

## THE PENDING MOTION

Pending before the court is Defendants' Motion for Summary Judgment (Doc. 34) (the "Motion") filed on February 28, 2017. The parties have supported and opposed the Motion. (Docs. 35, 38-40, 46, 51, 54). Accordingly, the Motion is ready for disposition and, for the reasons explained below, is due to be **GRANTED**. Specifically, all of Plaintiffs' federal claims are due to be **DISMISSED WITH PREJUDICE** as to all Defendants. Further, all of Plaintiffs' state law claims are due to be **DISMISSED WITH PREJUDICE** as to all Defendants other than Robert J. Dean, Jr. in his individual capacity and Daryl Abernathy in his individual capacity. Additionally, all of Plaintiffs' state law claims against Robert J. Dean, Jr. in his individual capacity and Daryl Abernathy in his individual capacity are also due to be **DISMISSED WITH PREJUDICE** except for their claims against those individuals in their individual capacities that are set out in Counts Nine (false arrest and false imprisonment) Count Eleven (malicious prosecution), Count Twelve (abuse of process), and Count Sixteen (conspiracy to commit these torts). Finally, the court finds that no federal claims remain and declines to exercise it supplemental jurisdiction over Plaintiffs' remaining state law claims. Accordingly, such claims are due to be **DISMISSED WITHOUT PREJUDICE**.

## II.   FACTUAL BACKGROUND [2,3]

Tyler Heining, together with his mother, owned a janitorial business known

as B&T Supplies ("B&T") that sold various items like toilet tissue, paper towels,

handsoap, road deicer, and degreaser to the City. AF No. 1;[4] (Doc. 35-2 at 8 at 25-

---

[2] Keeping in mind that when deciding a motion for summary judgment the court must view the evidence and all factual inferences in the light most favorable to the party opposing the motion, the court provides the following statement of facts. *See Optimum Techs., Inc. v. Henkel Consumer Adhesives, Inc.*, 496 F.3d 1231, 1241 (11th Cir. 2007) (observing that, in connection with summary judgment, a court must review all facts and inferences in a light most favorable to the non-moving party).This statement does not represent actual findings of fact. *See In re Celotex Corp.*, 487 F.3d 1320, 1328 (11th Cir. 2007). Instead, the court has provided this statement simply to place the court's legal analysis in the context of this particular case or controversy.

[3] The designation "AF" within this factual background section stands for admitted fact and indicates a fact offered by Defendants that Plaintiffs have admitted in their written submissions on summary judgment, in their deposition testimony, or by virtue of any other evidence offered in support of their case. Under appendix II of the court's Uniform Initial Order (Doc. 2) entered on August 13, 2015, "[a]ll statements of fact must be supported by specific reference to evidentiary submissions." (*Id.* at 16). For Plaintiffs, more specifically, this means that "[a]ny statements of fact that are disputed by the non-moving party must be followed by a specific reference to those portions of the evidentiary record upon which the dispute is based." (*Id.* at 17). Consequently, whenever Plaintiffs have inadequately asserted a dispute over a fact that Defendants have otherwise substantiated with an evidentiary citation, the court has reviewed the cited evidence and, if it in fact fairly supports Defendants' factual assertion, has accepted Defendants' fact. On the other hand, whenever Plaintiffs have adequately disputed a fact offered by Defendants, the court has reviewed the evidence cited by Plaintiffs and, if it in fact fairly supports Plaintiffs' factual assertion, has accepted Plaintiffs' version. The court's numbering of admitted facts (*e.g.*, AF No. 1) corresponds to the numbering of Defendants' statement of undisputed material facts as set forth in Doc. 35 and responded to by Plaintiffs in Doc. 51. A number following a decimal point corresponds to the particular sentence within the numbered statement of facts. For example, (AF No. 3.2) would indicate the second sentence of paragraph 3 of Defendants' statement of undisputed material facts is the subject of the court's citation to the record.

[4] The court acknowledges that Plaintiffs have objected to this fact as "immaterial and irrelevant to their claims against Defendants." (Doc. 51 at 4 ¶ 1). This fact is supported by record evidence and is included as a fact relevant to the overall background of this case. All page references to Doc. 51 correspond with the court's CM/ECF numbering system.

28).[5] Ronald Heining helped out with the company, including making sales contracts with the City. AF No 1; (Doc. 35-2 at 9 at 29); (Doc. 35-1 at 54 at 33);[6] AF No. 2.

According to Ronald Heining, in June or July of 2012, some unknown person (or persons) slipped a sealed envelope under the door of B&T. AF No. 3.1. The envelope stated, "Deliver Ben Little." AF No. 3.2. Ben Little ("Councilman Little") was an Anniston Councilman. AF No. 3.3. Ronald Heining testified that he did not know Councilman Little and found it odd that someone would slip an envelope under the door of B&T for Councilman Little. AF No. 4.

Inside the envelope were two or three sheets of paper concerning ethical violations committed by City officials, particularly within in the public works department. AF No. 5.1. Ronald Heining delivered the envelope to Councilman Little. AF No. 5.2. After Councilman Little read the envelope's contents, he and Ronald Heining went to the office of City Manager Hoyt. AF No. 6. Hoyt then read the two or three sheets of paper and said he would investigate the matter. AF No. 6.

---

[5] The first page references to Doc. 35-2 correspond with the court's CM/ECF numbering system.

[6] The first page references to Doc. 35-1 correspond with the court's CM/ECF numbering system.

Hoyt testified that this meeting with Councilman Little and Ronald Heining was actually the second time that Ronald Heining had come to see him (Hoyt). AF No. 7.1.[7] On the first occasion, Ronald Heining had come alone and accused City Public Works Director Dean, the head of the public works department, of not having proper credentials to hold his position. AF No. 7.2.[8] Hoyt conducted an investigation of that allegation. AF No. 8.1.[9] Hoyt testified that even though Dean did not have an engineering degree (Doc. 40-2 at 36), Hoyt concluded that whoever had alleged that Dean lacked the proper credentials was wrong. AF No. 8.2.[10]

Hoyt also conducted an investigation of each of the allegations of impropriety within the Public Works Department that were presented to him by Councilman Little and Ronald Heining. (Doc. 35-1 at 45-46); (Doc. 35-5 at 26).

---

[7] The court acknowledges that Plaintiffs have objected to this fact as "immaterial and irrelevant to their claims against Defendants." (Doc. 51 at 5 ¶ 7). This fact is supported by record evidence and is included as a fact relevant to the overall background of this case.

[8] The court acknowledges that Plaintiffs have objected to this fact as "immaterial and irrelevant to their claims against Defendants." (Doc. 51 at 5 ¶ 7). This fact is supported by record evidence and is included as a fact relevant to the overall background of this case.

[9] The court acknowledges that Plaintiffs have objected to this fact as "immaterial and irrelevant to their claims against Defendants." (Doc. 51 at 5 ¶ 8). This fact is supported by record evidence and is included as a fact relevant to the overall background of this case.

[10] The court acknowledges that Plaintiffs have objected to this fact as "immaterial and irrelevant to their claims against Defendants." (Doc. 51 at 5 ¶ 8). This fact is supported by record evidence and is included as a fact relevant to the overall background of this case.

During his investigation, Hoyt had a meeting with the Public Works Department to discuss the rumors and allegations, to inform the employees that he would investigate and prepare a report, and to tell the employees to refrain from spreading rumors. AF No. 12.

Holt took no action against Dean and City Assistant Street Superintendent Abernathy after investigating the allegations. Plaintiffs question the thoroughness of Hoyt's investigation and point out that each man later pleaded guilty to an ethics violation related to the conduct that Hoyt investigated. (Doc. 51 at 5-6 ¶ 10); (Doc. 38-4 at 47-51);[11] (Doc. 40-4 at 54-55).[12]

James Fluker ("Mr. Fluker"), a laborer who formerly worked for the City Public Works Department, has sworn in an affidavit dated July 11, 2015,[13] that he was recruited by the Individual Defendants to set up both Councilman Little and Plaintiffs.[14] Although the timeline provided by Mr. Fluker is not entirely clear, Mr.

---

[11] All page references to Doc. 38-4 correspond with the court's CM/ECF numbering system.

[12] All page references to Doc. 40-4 correspond with the court's CM/ECF numbering system.

[13] Mr. Fluker's affidavit is attached to Plaintiffs' First Amended Complaint. (Doc. 5-1). It is also part of Plaintiffs' evidentiary submission offered in opposition to the Motion. (Doc. 38-3).

[14] The court acknowledges that Defendants' version of facts regarding Mr. Fluker differ sharply from that of Plaintiffs. Therefore, the sworn testimony from witnesses that Defendants rely upon to support their version of events constitutes disputed facts in light of the contents of Mr. Fluker's affidavit, and the conflicting evidence contained in the record creates a "he said/they said" credibility contest. Further, because Plaintiffs are the non-movants, the court is obligated to view the record in the light most favorable to them. Consequently, the court accepts Plaintiffs' reliance upon

Fluker testified that during a meeting that took place at the old National Guard Armory, Dean and Abernathy "confronted [him] about talking to [Councilman] Little" and "asked [him] to meet privately with [them] and Hoyt while at the Armory meeting." (Doc. 5-1 at 2 ¶ 11). "Dean told [Mr. Fluker] that if [he] didn't help them to set up [Councilman] Little, then they would fire [him]." (Doc. 5-1 at 2 ¶ 12). Mr. Fluker maintains that Dean and Abernathy "asked [him] to call [Councilman] Little and get [Councilman Little] to ask [Mr. Fluker] to get a copy of a DVD dealing with a stolen trailer." (Doc. 5-1 at 2 ¶ 12).

Abernathy then took Mr. Fluker to Dean's office. (Doc. 5-1 at 1 ¶ 6). Dean was already there and stated that "he wanted [Councilman] Little gone because they wanted to contract our jobs." (Doc. 5-1 at 1 ¶ 6). Hoyt subsequently walked into the office and "said to [Mr. Fluker] that [he] was doing the right thing by helping to prosecute [Councilman] Little." (Doc. 5-1 at 1 ¶ 7).

Around this same time, Mr. Fluker and Ronald Heining attended a City Council Meeting in which Councilman Little read and discussed the accusations of impropriety against the City Public Works Department. AF No. 16.1 Mr. Fluker sat next to Ronald Heining, and, according to Ronald Heining, Mr. Fluker confided that he had previously placed coolant seal belonging to the City on

_____

Mr. Fluker's account of these events for the purpose of evaluating the merits of Defendants' Motion.

Abernathy's truck for his personal use. AF No. 16.2. After the City Council Meeting, Ronald Heining introduced Mr. Fluker to Councilman Little as "the guy that put coolant seal on Daniel [sic] Abernathy's vehicle." AF No. 17.

Lt. Allen George ("Lt. George") was the police investigator who was in charge of investigating Mr. Fluker's fabricated allegations that Councilman Little had asked him to steal the security footage DVD. AF No. 19.1. When Lt. George learned about the DVD allegations involving Councilman Little, he met with Dean, Abernathy and Mr. Fluker in Dean's office. AF No. 19.2. Hoyt was not present at this meeting. AF No. 19.3.

After Lt. George completed his investigation, Councilman Little was arrested and charged criminally. AF No 23.1. Although Councilman Little was found guilty at the district court level, he appealed that decision and his criminal case was later *nolle prossed*. AF No. 23.2.

Mr. Fluker further states in his affidavit that, at some point in August of 2012, Abernathy came to see Mr. Fluker while he was on a lunch break during work. (Doc. 5-1 at 1 ¶ 4). According to Mr. Fluker, "Mr. Abernathy told [Mr. Fluker] to come with him to file a police report against Ronald Heining and his son, Tyler Heining." (Doc. 5-1 at 1 ¶ 5). Abernathy explained to Mr. Fluker that if he agreed to "set up" Plaintiffs, then he would receive "a pay raise and . . . comp

time." (Doc. 5-1 at 2 ¶ 13).

More specifically as it pertains to the "set up" of Plaintiffs, Mr. Fluker has testified that Dean and Abernathy, "came up with a story about [Plaintiffs'] meeting [Mr. Fluker] at Scotts Grocery and attempting to bribe [Mr. Fluker] and influence [him] so [he] would not testify against [Councilman] Little."[15] (Doc. 5-1 at 2 ¶ 14). After "agree[ing] to [tell] that false story, [Mr. Fluker] went across the street with Abernathy" to the Anniston Police Department and made the false report about Plaintiffs to Lt. George. (Doc. 5-1 at 2 ¶¶ 15, 16).

According to the Alabama Uniform Incident/Offense Report (the "Report") dated August 23, 2012, attached as an exhibit to Ronald Heining's deposition, Mr. Fluker reported that he had received threats by phone and was followed by Ronald Heining for "an extended period of time" on August 14, 2012. (Doc. 35-1 at 30). The Report further reflects that Mr. Fluker felt "that all of these actions [were] because of him coming forward against Councilman Little." (Doc. 35-1 at 30).

Mr. Fluker also indicated that on August 18, 2012, at approximately 7:00 p.m., he and his wife Amy were purchasing fuel at Scott's Grocery when Ronald

---

[15] Mr. Fluker's affidavit does not implicate Hoyt in the fabrication of allegations against Plaintiffs; only in the fabrication of allegations against Councilman Little. And, Mr. Fluker's affidavit is the only evidence before this Court of any conspiracy. Accordingly, to the extent asserted against Hoyt, Plaintiffs' claims of conspiracy (Counts Eight and Sixteen) are due to be dismissed with prejudice on that basis.

Heining and an individual Mr. Fluker believed to be Tyler Heining pulled up in a small black sports utility vehicle and Ronald Heining stated, "I have $1,000 cash if you don't go to trial with Ben Little and keep your mouth shut." (Doc. 35-1 at 30). Mr. Fluker further reported that Ronald Heining kept saying, "take the money, you know you need the money, just take it." (Doc. 35-1 at 31). The Report also states that when Mr. Fluker would not take the money, Ronald Heining told him, "I will be at Ben Little's trial and will be on his side and testify about all of this crap" before driving away "at a high rate of speed like he was mad." (Doc. 35-1 at 31).

Mr. Fluker identified Tyler Heining from a photographic lineup. AF No. 30.1. Mr. Fluker's wife confirmed the encounter at Scott's Grocery, but was unable to identify either Ronald Heining or Tyler Heining. AF No. 30.2.

On August 24, 2012, Ronald Heining and Tyler Heining were both arrested and charged with intimidating a witness, an alleged violation of Ala. Code § 13A-10-123, and bribing a witness, an alleged violation of Ala. Code § 13A-10-121. AF No. 31. Both Ronald and Tyler Heining were placed in jail for about two to three hours before being released on bond.[16] AF No. 32.

---

[16] The court acknowledges that Plaintiffs have objected to the approximate amount of time that they spent in jail as a fact that is "immaterial and irrelevant to their claims against Defendants." (Doc. 51 at 10 ¶ 32). This information is supported by record evidence and is included as a fact

After the August 2012 arrest, Ronald Heining was arrested for disorderly conduct as the result of complaints made by Nicole Dean, the wife of City Public Works Director Dean. AF No. 33.1. Ronald Heining was arrested a third time on October 24, 2012, again for intimidating a witness, this time in relation to allegations made by City Assistant Street Superintendent Abernathy. AF No. 33.2.

From the time of their arrests, Ronald and Tyler Heining have denied any involvement in any alleged bribery or intimidation of Mr. Fluker. AF No. 36.1. More specifically, in January 2013, Ronald and Tyler Heining told their criminal defense attorney that they were somewhere else when the alleged bribery and intimidation of Mr. Fluker supposedly occurred and provided a list of alibi witnesses to corroborate their story. AF No. 36.2.

On April 9, 2015, the bribery and intimidation charges stemming from Ronald and Tyler Heining's August 2012 arrests were *nolle prossed* by [Assistant District Attorney] Randy Moeller ("Mr. Moeller"). AF No. 37. When questioned about the decision not to prosecute these charges, Mr. Moeller recalled that "Mr. Fluker had issues. He was a problematic witness." (Doc. 35-7 at 4 at 11).[17] Mr. Moeller also confirmed that Mr. Fluker had received more charges. *Id.*

_____

relevant to the overall background of this case.

[17] The first page references to Doc. 35-7 correspond with the court's CM/ECF numbering system.

## III.    STANDARDS

Under Federal Rule of Civil Procedure 56, summary judgment is proper if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 2265 (1986) ("[S]ummary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.") (internal quotation marks omitted). The party requesting summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings or filings that it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323, 106 S. Ct. at 2553. Once the moving party has met its burden, Rule 56(c) requires the non-moving party to go beyond the pleadings in answering the movant.[18] *Id.* at 324, 106 S. Ct. at 2553. By its own affidavits – or by the depositions, answers to interrogatories, and admissions on file – it must designate specific facts showing that there is a genuine issue for trial.

---

[18] When *Celotex* was decided, FED. R. CIV. P. 56(e) encompassed this express requirement; now this concept is covered by the language provided for under FED. R. CIV. P. 56(c).

*Id.*

The underlying substantive law identifies which facts are material and which are irrelevant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d. 202 (1986). All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the non-movant. *Chapman v. AI Transport*, 229 F.3d 1012, 1023 (11th Cir. 2000). Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. *Anderson*, 477 U.S. at 248, 106 S. Ct. at 2510. A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* If the evidence presented by the non-movant to rebut the moving party's evidence is merely colorable, or is not significantly probative, summary judgment may still be granted. *Id.* at 249, 106 S. Ct. at 2511.

How the movant may satisfy its initial evidentiary burden depends on whether that party bears the burden of proof on the given legal issues at trial. *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993). If the movant bears the burden of proof on the given issue or issues at trial, then it can only meet its burden on summary judgment by presenting *affirmative* evidence showing the absence of a genuine issue of material fact – that is, facts that would entitle it to a

directed verdict if not controverted at trial. *Id.* (citing *United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1438 (11th Cir. 1991)). Once the moving party makes such an affirmative showing, the burden shifts to the non-moving party to produce "significant, probative *evidence* demonstrating the existence of a triable issue of fact." *Id.* (emphasis added).

For issues on which the movant does not bear the burden of proof at trial, it can satisfy its initial burden on summary judgment in either of two ways. *Id.* at 1115-16. First, the movant may simply show that there is an absence of evidence to support the non-movant's case on the particular issue at hand. *Id.* at 1116. In such an instance, the non-movant must rebut by either (1) showing that the record in fact contains supporting evidence sufficient to withstand a directed verdict motion, or (2) proffering evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency. *Id.* at 1116-17. When responding, the non-movant may no longer rest on mere allegations; instead, it must set forth evidence of specific facts. *Lewis v. Casey*, 518 U.S. 343, 358, 116 S. Ct. 2174, 2183, 135 L. Ed. 2d 606 (1996). The second method a movant in this position may use to discharge its burden is to provide affirmative *evidence* demonstrating that the non-moving party will be unable to prove its case at trial. *Fitzpatrick*, 2 F.3d at 1116. When this occurs, the non-movant must rebut by

offering *evidence* sufficient to withstand a directed verdict at trial on the material

fact sought to be negated. *Id.*

## III.    THE STATUTE OF LIMITATIONS, ACCRUAL, AND TOLLING

> All constitutional claims brought under § 1983 are tort actions
> and, thus, are subject to the statute of limitations governing personal
> injury actions in the state where the § 1983 action has been brought.
> *See Wallace v. Kato*, 549 U.S. 384, 387, 127 S.Ct. 1091, 166 L.Ed.2d
> 973 (2007). Alabama law creates a two-year statute of limitations for
> personal injury actions. *See* Ala. Code § 6-2-38. Therefore, if any of
> [Plaintiffs'] claims accrued prior to ... two years prior to the date
> [they] filed this lawsuit—they are time barred by the statute of
> limitations.

*Boyd v. Warden, Holman Corr. Facility*, 856 F.3d 853, 872 (11th Cir. 2017).

Thus, the Court will apply Alabama's two-year statute of limitations to each

federal claims (Counts One through Eight). As to each pendant state claim (Counts

Nine through Sixteen), the Court will apply Alabama's limitations period specific

to that claim.

Furthermore, although federal law, as opposed to state law, determines

when a cause of action has accrued as to a § 1983 damage action, *Wallace v. Kato*,

549 U.S. 384, 388, 127 S. Ct. 1091, 1095, 166 L. Ed. 2d 973 (2007), the Court has

not found any discrepancy between federal law and Alabama law regarding

accrual of claims. Accordingly, its accrual analysis will be applied consistently to

all claims, whether based on federal law or on state law. Finally, the issue of

equitable tolling is determined by Alabama law, even as to Plaintiffs' § 1983

claims. *Board of Regents of University of State of N.Y. v. Tomanio*, 446 U.S. 478,

100 S. Ct. 1790, 64 L. Ed. 2d 440 (1980). Accordingly, the Court's analysis of

equitable tolling will be applied consistently to all claims, whether based on

federal or state law.

**A.    The Statute of Limitations**

**1.    Plaintiffs' Federal Claims**

The Supreme Court has ruled that, for statute of limitations purposes, §

1983 actions are analogous to personal injury actions. *Wilson v. Garcia*, 471 U.S.

261, 105 S. Ct. 1938, 85 L. Ed. 2d 254 (1985); *see also Allen v. King*, 279 F.

App'x 847, 848 (11th Cir. 2008) ("There is no specific statute of limitations period

for actions brought under § 1983. *Owens v. Okure*, 488 U.S. 235, 239, 109 S. Ct.

573, 576, 102 L. Ed. 2d 594 (1989). Instead, the statute of limitations period for §

1983 claims is determined by the state's statute of limitations for personal injury

claims. *Id*. at 240-41, 109 S. Ct. 573."). In Alabama, the statute of limitations for

filing a personal injury claim — and thus a 1983 action based on laws enacted

before December 1, 1990 — is two years. *Lufkin v. McCallum*, 956 F.2d 1104,

1106, 1108 (11th Cir.), *cert. denied*, 506 U.S. 917 (1992); ALA. CODE 1975 §

6–2–38(l).[19]

### 2.    Plaintiffs' State Law Claims

Alabama's statute of limitations for all of Plaintiffs' state law claims other

than false imprisonment (Count Nine) and assault and battery (Count Ten) is two

years. ALA. CODE 1975 § 6–2–38(l) ("All actions for any injury to the person or

rights of another not arising from contract and not specifically enumerated in this

section must be brought within two years."). As pointed out by Plaintiffs' in their

opposition brief (Doc. 51 at 46), and undisputed by Defendants in their reply brief,

Alabama's statute of limitations for Plaintiffs' state law claims for false

imprisonment (Count Nine) and assault and battery (Count Ten) is six years. ALA.

CODE 1975 § 6–2–34(1) ("The following must be commenced within six years: (1)

Actions for any trespass to person or liberty, such as false imprisonment or assault

and battery").

### B.    Accrual

Federal law determines the date on which the statute begins to run [as
to a federal claim], and the statute of limitations for a § 1983 action
begins to run from the date "the facts which would support a cause of
action are apparent or should be apparent to a person with reasonably

_____

[19] Here, the parties agree that the statute of limitations for filing a § 1983 action is two years. However, they disagree as to when each of Plaintiffs' § 1983 claims actually accrued. Alternatively, Plaintiffs argue that the limitations periods as to their § 1983 claims should be equitably tolled. As to these claims, the court will first address the issue of accrual, and then that of equitable tolling.

prudent regard for his rights." *Brown v. Georgia Bd. of Pardons and Paroles*, 335 F.3d 1259, 1261 (11th Cir.2003) (quoting *Rozar v. Mullis*, 85 F.3d 556, 561–62 (11th Cir.1996)); *Mullinax v. McElhenney*, 817 F.2d 711, 716 (11th Cir.1987). "It is well established that a federal claim accrues when the prospective plaintiff knows or has reason to know of the injury which is the basis of the action." *McNair v. Allen*, 515 F.3d at 1174 (quoting *Corn v. City of Lauderdale Lakes*, 904 F.2d 585, 588 (11th Cir.1990)).

*Salas v. Pierce*, 297 F.App'x 874, 877 (11th Cir.2008).[20]

Alabama law is the same.

> The very basic and long settled rule of construction of our courts is that a statute of limitations begins to run in favor of the party liable from the time the cause of action "accrues." The cause of action "accrues" as soon as the party in whose favor it arises is entitled to maintain an action thereon.

*Freeman v. Holyfield*, 179 So.3d 101, 105 (Ala. 2015) (internal citations omitted)

(some alterations in punctuation).

When a prospective plaintiff has the requisite knowledge depends on what

claims he or she wishes to assert.[21] Thus, the Court will address each of the

---

[20] "Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority." 11TH CIR. R. 36–2 (2005).

[21] Thus, a claim based on false arrest or illegal search and seizure generally accrues when the police conduct actually occurred and not when the plaintiff was acquitted or convicted of the resulting criminal charges. Similarly, a claim alleging the denial of a fair trial generally accrues at the conclusion of the trial, unless the plaintiff could not reasonably have known of the violation then. The accrual of an action based on the violation of rights during a criminal trial is not delayed during habeas corpus proceedings challenging the conviction, if the plaintiff knew of the injury forming the basis of the action earlier. When a § 1983 claim is based on the unlawful taking of property, the statute of limitations begins to run on the date of the wrongful appropriation. § 12.40. Accrual of claim, *2 Civ. Actions Against State & Loc. Gov't* (footnotes omitted).

Plaintiffs' Counts (that they have not completely abandoned)[22] in light of the types of claims they assert.[23]

## C.    <u>Equitable Tolling</u>

The doctrine of equitable tolling creates an exception to the time limitations otherwise imposed by statutes of limitations. Whether applied to a federal law claim or a state law claim, "[t]he party seeking equitable tolling has the burden of proof, *Menominee Indian Tribe of Wis. v. United States*, —— U.S. ——, 136 S.Ct. 750, 755–56, 193 L.Ed.2d 652 (2016)." *Villarreal v. R.J. Reynolds Tobacco Co.*, 839 F.3d 958, 971 (11th Cir. 2016), *cert. denied*, 137 S. Ct. 2292 (2017). " '[A] litigant seeking equitable tolling bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' as to the filing of his action." *Weaver v. Firestone*, 155 So. 3d 952, 957-8 Ala. 2013) (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418, 125 S.Ct. 1807, 161 L.Ed.2d 669 (2005)). " '[T]he threshold necessary to trigger equitable tolling is very high, lest the exceptions swallow the rule.'" *Id*. at 958 (quoting *Ex parte Ward*, 46 So.3d 888 (Ala.2007)). Further, even when the statutes of limitations are tolled, a plaintiff can recover only for injuries sustained

---

[22] *See* section IV.A., *infra*, of this Memorandum Opinion.

[23] As explained *supra*, Plaintiffs have completely abandoned their claims in Counts Six and Seven, as well as their claims in any Counts for failure to train (*e.g.*,Count Fifteen in its entirety).

during the limitations period. *Am. Mut. Liab. Ins. Co. v. Agricola Furnace Co.*, 236 Ala. 535, 183 So. 677, 679 (1938).

## IV. ANALYSIS

The court turns first to those claims which Defendants assert are abandoned by Plaintiffs' failure to respond at summary judgment. It next addresses, as to Plaintiffs' non-abandoned claims, Defendants' assertions that all of such claims other than Plaintiffs' claims for malicious prosecution are barred by the statute of limitations. Finally, as to claims that are neither abandoned nor time-barred, the court analyzes claims that Defendants assert fail substantively.

### A. **Abandoned Claims**

### 1. **Completely abandoned claims**

In their reply brief, Defendants maintain that there are several categories of claims which Plaintiffs have abandoned by not addressing them at all. (Doc. 54 at 26).[24] These include:

> (1) any "official capacity" claims against individual Defendants, (2) any "Sixth Amendment" claims, (3) any "respondeat superior" claims, (3) any claim against Anniston based on alleged intentional torts of individual defendants, as municipal immunity applies, and (4) any claim against Anniston based on an alleged "failure to train."

*Id.*

---

[24] All page references to Doc. 54 correspond with the court's CM/ECF number system.

Having studied Plaintiffs' opposition to the Motion, the court agrees with Defendants that a dismissal of the foregoing claims on the grounds of abandonment is appropriate because Plaintiffs have omitted any reference to them in their opposition brief.[25] *See, e.g.*, *Wilkerson v. Grinnell Corp.*, 270 F.3d 1314, 1322 (11th Cir. 2001) (finding claim abandoned when argument not presented in initial response to motion for summary judgment); *Bute v. Schuller International, Inc.,* 998 F. Supp. 1473, 1477 (N.D. Ga. 1998) (finding unaddressed claim abandoned); *see also Coalition for the Abolition of Marijuana Prohibition v. City of Atlanta*, 219 F.3d 1301, 1326 (11th Cir. 2000) (failure to brief and argue issue at the district court is sufficient to find the issue has been abandoned); *Resolution Trust Corp. v. Dunmar Corp.,* 43 F.3d 587, 599 (11th Cir. 1995) ("[T]he onus is upon the parties to formulate arguments; grounds alleged in the complaint but not relied upon in summary judgment are deemed abandoned."); *Hudson v. Norfolk Southern Ry. Co.,* 209 F. Supp. 2d 1301, 1324 (N.D. Ga. 2001) ("When a party fails to respond to an argument or otherwise address a claim, the Court deems such argument or claim abandoned." (citing *Dunmar*, 43 F.3d at 599)); *cf. McMaster v. United States,* 177 F.3d 936, 940-41 (11th Cir. 1999) (claim may be considered

---

[25] Notably, Plaintiffs have not contested Defendants' position on abandonment of these claims by, for example, seeking permission to file a surreply.

abandoned when district court is presented with no argument concerning a claim included in the plaintiff's complaint); *Road Sprinkler Fitters Local Union No. 669 v. Independent Sprinkler Corp.,* 10 F.3d 1563, 1568 (11th Cir. 1994) (concluding that a district court "could properly treat as abandoned a claim alleged in the complaint but not even raised as a ground for summary judgment").

Further, Plaintiffs have not offered any opposition to Defendants' arguments (Doc. 35 at 33-34) made in support of dismissing Plaintiffs' assault and battery claim (Count Ten). Therefore (i) all official-capacity claims against the Individual Defendants (all Counts),[26] all Sixth Amendment claims against all Defendants (Counts Six and Seven),[27] (ii) all respondeat superior-based claims, (iii) all intentional-tort claims against the City (Counts Two, Three, Eight, Nine, Ten,

---

[26] Additionally, because Plaintiffs have separately sued the City, their official capacity claims are redundant. *See Yeldell v. Cooper Green Hosp., Inc.*, 956 F.2d 1056, 1060 (11th Cir. 1992). ("Official-capacity suits, in contrast, 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'" (quoting *Kentucky v. Graham*, 473 U.S. 159, 165, 105 S. Ct. 3099, 3105, 87 L. Ed. 2d 114 (1985)) (citing *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 690, n.55, 98 S. Ct. 2018, 2035, n.55, 56 L. Ed. 2d 611 (1978))); (*see also* Doc. 35 at 23 (Defendants' explaining that "any official-capacity claims are duplicative of Plaintiffs' same claims against Anniston)). All page references to Doc. 35 correspond with the court's CM/ECF numbering system.

[27] Additionally, the court cannot envision how Defendants' disputed wrongful actions arguably trigger Plaintiffs' Sixth Amendment rights. The scope of the Sixth Amendment is limited to criminal proceedings and guarantees a criminal defendant the right to counsel. *See Austin v. United States*, 509 U.S. 602, 608, 113 S. Ct. 2801, 125 L. Ed. 2d 488 (1993) ("The protections provided by the Sixth Amendment are explicitly confined to 'criminal prosecutions.'" (quoting *United States v. Ward*, 448 U.S. 242, 248, 100 S. Ct. 2636, 2641, 65 L. Ed. 2d 742 (1980))).

Eleven, Twelve and Sixteen), (iv) all failure-to-train claims against the City (Counts Thirteen, Fourteen and Count Fifteen), and (v) the assault and battery claim (Count Ten) are due to be **DISMISSED with prejudice** as completely abandoned by Plaintiffs.[28]

## 2. Partially abandoned claims

Defendants also assert that Plaintiffs have abandoned other claims by only addressing them superficially, and then only as brought against the Individual Defendants. These include Plaintiffs' § 1983 conspiracy claim and their state law claims for abuse of process, negligence, wantonness, and conspiracy. (Doc. 54 at 26). The court agrees with Defendants that Plaintiffs' contentions regarding some of these claims are underdeveloped but, nonetheless, addresses them further within this opinion because Defendants have done so in their reply. (*See* Doc. 54 at 26 ("However, Defendants will also address these issues, as well as the unavailing arguments that Plaintiffs do offer, below.")).

## B. Time-Barred Claims

The first analytical section of Defendants' brief asserts that they are entitled

---

[28] Thus, as to the City, only the claims in Counts Two, Four, and Five have not been completely abandoned. As to the Individual Defendants, only individual-capacity claims have not been completely abandoned, and, even then, all claims against the Individual Defendants that are asserted in Counts Six, Seven, and Ten have been completely abandoned.

to prevail on summary judgment because, with the exception of their malicious prosecution claims (doc. 35 at 14),[29] all of Plaintiffs' claims are time-barred. (Doc. 35 at 13). Because this is an affirmative defense, in order to prevail on summary judgment, "[Defendants] must establish that there is no genuine issue of material fact as to any element of that defense." *Int'l Stamp Art, Inc. v. U.S. Postal Serv.*, 456 F.3d 1270, 1274 (11th Cir. 2006) (citing *Martin v. Alamo Community College Dist.*, 353 F.3d 409, 412 (5th Cir. 2003)). The disputed issues are: (1) when did each of the claims (other than malicious prosecution) accrue; and (2) are the Plaintiffs entitled to equitable tolling as to any otherwise time-barred claim.[30]

Initially, the court notes that the parties (and, at times, opinions discussed by the parties or by the court) sometimes use the term "accrue" with precision, but other times use the term "accrue" when they could more appropriately have used the term "tolled". Because, as explained *infra*, federal law determines when a federal claim accrues, but state law determines when the claim is tolled, this court has attempted to use these terms consistent with their definitions as set out in *Black's Law Dictionary* (10th ed. 2014). Those definitions are set out here.

**ACCRUE**

---

[29] All page references to Doc. 35 correspond with the court's CM/ECF numbering system.

[30] As explained at section III. C., *supra*, the burden of proof is on the Plaintiffs to show that they are entitled to equitable tolling.

accrue (-kroo) vb. (15c) 1. To come into existence as an enforceable claim or right; to arise <the plaintiff's cause of action for silicosis did not accrue until the plaintiff knew or had reason to know of the disease>.

"The term 'accrue' in the context of a cause of action means to arrive, to commence, to come into existence, or to become a present enforceable demand or right. The time of accrual of a cause of action is a question of fact." 2 Ann Taylor Schwing, *California Affirmative Defenses* § 25:3, at 17–18 (2d ed. 1996).

**TOLL**

toll vb. (15c) 1. To annul or take away <toll a right of entry>. 2. (Of a time period, esp. a statutory one) to stop the running of; to abate <toll the limitations period>. See equitable tolling. 3. Hist. To raise or collect a tax or due for the use of something.

1. **Plaintiffs' federal false imprisonment claims are time-barred; their state false imprisonment claims are not time-barred.**

Count One (§ 1983 unlawful seizure), Counts Four and Five (§ 1983 non-specific deprivation of liberty) and Count Nine (state law false arrest and imprisonment) analytically all fall within the ambit of a cause of action for false imprisonment.[31,32]As the Supreme Court has held:

False arrest and false imprisonment overlap; the former is a species of

_____

[31] As explained at Section IV.A.1., *supra*, Plaintiffs have abandoned Count Nine to the extent it was asserted against the City and to the extent it was asserted against the Individual Defendants in their official capacities.

[32] These claims remain for analysis only as to City and as to the Individual Defendants in their individual capacities.

the latter....

We shall thus refer to the two torts together as false imprisonment. That tort provides the proper analogy to the cause of action asserted against the present respondents for the following reason: The sort of unlawful detention remediable by the tort of false imprisonment is detention without legal process ....

....

Reflective of the fact that false imprisonment consists of detention without legal process, a false imprisonment ends once the victim becomes held pursuant to such process-when, for example, he is bound over by a magistrate or arraigned on charges.... If there is a false arrest claim, damages for that claim cover the time of detention up until issuance of process or arraignment, but not more.

*Wallace v. Kato*, 549 U.S. 384, 388–90, 127 S.Ct. 1091, 1095–96, 166 L.Ed.2d 973 (quotations and citations omitted).

a.    *These claims accrued in 2012*

Defendants contend that all of Plaintiffs' false imprisonment claims accrued on August 24, 2012, the date of Plaintiffs' arrests (and also the date of their release). Since this action was not commenced until the filing of this lawsuit on August 12, 2015, Defendants assert that all of such claims are time-barred under ALA. CODE § 6-2-38(*l*). In opposition, Plaintiffs do not dispute that § 6-2-38(*l*) is the applicable statute of limitations as to Plaintiffs' federal claims, and as to all of Plaintiffs' state law claims other than false imprisonment (Count Nine) and assault

and battery (Count Ten).[33] Instead, Plaintiffs argue that the statute did not begin to run until 2015. Alternatively, they argue that the statute is equitably tolled. Finally, they argue that they have presented substantial evidence to create a jury question as to when the statute began to run.

The Supreme Court's decision in *Wallace v. Kato*, 549 U.S. 384, 127 S. Ct. 1091, a case directly on point as to Plaintiffs' false imprisonment claims, is controlling. The *Wallace* Court needed to resolve when the plaintiff's false imprisonment claims ended so that the beginning of the limitations period could be determined, that is, when the statute of limitations began to run. *Id*. at 389, 127 S. Ct. at 1096. Relying on the traditional rule of accrual, the Court held that "the tort cause of action accrues, and the statute of limitations commences to run, when the wrongful act or omission results in damages .... even though the full extent of the injury is not then known or predictable." *Id*. at 391, 127 S. Ct. at 1097 (quotation marks and citation omitted). Under this rule, "[accrual occurs] when the plaintiff has a complete and present cause of action, that is, when the plaintiff can file suit and obtain relief[.]" *Id*. at 388, 127 S. Ct. at 1095 (quoting *Bay Area Laundry & Dry Cleaning Pension Trust Fund v. Ferbar Corp. of Cal.*, 522 U.S.

---

[33] As explained *supra*, these state law claims are subject to a six-year statute of limitations pursuant to ALA. CODE 1975 § 6-2-34(1). Accordingly, the claims in Counts Nine and Ten are timely, as this lawsuit was filed in 2015.

192, 201, 118 S. Ct. 542, 139 L. Ed. 2d 553 (1997) (quotation marks and citation omitted)).

In *Wallace*, the plaintiff was arrested without a warrant. After the appeal of his conviction was successful and the prosecutor declined further prosecution, he filed a § 1983 action for his false arrest and false imprisonment. *Id*. at 387, 127 S. Ct. at 1094. The Court ruled that "on a § 1983 claim seeking damages for a false arrest in violation of the Fourth Amendment, where the arrest is followed by criminal proceedings, [the statute of limitations] begins to run at the time the claimant becomes detained pursuant to legal process." *Id*. at 397, 127 S. Ct. at 1100 (emphasis supplied). The claims in *Wallace* were determined to be barred by the statute of limitations because the plaintiff filed his action more than two years after he was held pursuant to legal process. *Id*. & *id*. at 390 n. 3, 127 S. Ct. at 1096 n.3 (observing that his action could have been filed at the moment he was falsely arrested).

Thus, although Plaintiffs argue that the appropriate starting point for measuring the timeliness of their false imprisonment claims is July 11, 2015, they are wrong. The Plaintiffs choose this date because it is the date when Mr. Fluker revealed the role of City Public Works Director Dean and City Assistant Street Superintendent Abernathy in the conspiracy to bring false criminal charges against

Plaintiffs. (Doc. 51 at 40) ("The Defendants engaged in a conspiracy to falsely accuse the Heinings of a felony which led to their arrest and indictment.") (The Heinings have presented substantial evidence which could lead a rational juror to conclude that the Heinings' claims accrued on July 11, 2015, when they learned of the Defendants' conspiracy.") On its face, this argument does not delay the running of the statute of limitations as to the Plaintiffs' false imprisonment claims. The Plaintiffs do not even <u>argue</u> that they did not know any necessary aspect of <u>those</u> claims. Essentially, they are trying to "bootstrap" the timeliness of their <u>false imprisonment</u> claims by arguing lack of knowledge as to their <u>conspiracy</u> claim. The Court rejects this argument.

The Plaintiffs rely on *Mullinax v. McElhenney*, 817 F.2d 711 (11th Cir. 1987) to support their "non-accrual" argument. However, at least as to Plaintiffs' false imprisonment claims, *Mullinax* actually supports the Defendants.

In that case, in relevant part, the district court dismissed as barred by Georgia's two-year statute of limitations the plaintiff's entrapment, conspiracy, and harassment claims. The plaintiff appealed. As summarized by the Eleventh Circuit:

> The parties do not contest the applicability of that statute of limitations to this proceeding. Nor do they disagree as to when Mullinax commenced this action—August 9, 1984. Consequently,

they also agree that those claims are barred if they accrued prior to August 10, 1982. They do dispute, however, when those claims accrued. Mullinax contends that they accrued, at the earliest, on August 12, 1982, <u>when she was arrested</u> for aiding the attempted jail escape. Until then, she argues, she was unaware of the full extent of her injury, its cause, or the parties involved. [The Defendants] argue that any cause of action accrued sometime during June and July of 1982 when they undertook the two attempts to entrap Mullinax. The district court, agreeing with [the Defendants], found these claims to be time barred.

*Id*. at 715-16.

After explaining that accrual of a § 1983 claim is a matter of federal, not state, law, the Eleventh Circuit then set out that applicable federal law as follows.

In Section 1983 cases, " 'the statute [of limitations] does not begin to run until the facts which would support a cause of action are apparent or should be apparent to a person with a reasonably prudent regard for his rights.' " *Calhoun v. Alabama Alcoholic Beverage Control Board*, 705 F.2d 422, 425 (11th Cir.1983) (quoting *Reeb v. Economic Opportunity Atlanta, Inc.*, 516 F.2d 924, 930 (5th Cir.1975)). Thus Section 1983 actions do not accrue until the plaintiff knows or has reason to know that he has been injured. *Lavellee* [*v. Listi*], 611 F.2d [1129,] ... 1131 [(5th Cir.1980)], (quoting *United States v. Kubrick*, 444 U.S. 111, 100 S. Ct. 352, 62 L. Ed. 2d 259 (1979)).

Consequently, the district court erred in dismissing this action as time barred simply because both entrapment attempts occurred prior to August 10, 1982. Instead, <u>it should have looked to when Mullinax first realized that she had been injured and that [the Defendants] had inflicted that injury.</u> Under that standard, any cause of action arising out of the entrapment attempts accrued after August 10, 1982.

First, <u>Mullinax was unaware</u> of the second entrapment attempt before August 11, 1982. Although McElhenney may have placed the

package in Wallace's post office box prior to August 10, both McElhenney's investigative summaries and records from the Clayton County sheriff's office indicate that <u>Mullinax was unaware</u> of the package's presence until August 11. Until she discovered the package's presence, <u>Mullinax was unaware</u> of any harm resulting from the second entrapment attempt. Therefore, any cause of action arising out of that entrapment attempt could not have accrued before August 11, 1982.

More importantly, <u>Mullinax did not become aware</u> of [the Defendants'] involvement in procuring the telephone calls by Stocks and in placing the package in Wallace's post office box any sooner than August 12, 1982—the day she was arrested. Nor should she have. Stocks misrepresented himself as an acquaintance of Wallace, and we have found nothing in Stocks's conversations with Mullinax that indicates [the Defendants'] involvement. Nor did Mullinax have any reason to suspect that [the Defendants] were involved in mailing the package to Wallace's post office box. Thus, <u>until she was arrested, Mullinax was unaware</u> of [the Defendants] connection with the phone calls and the suspect package in Wallace's post office box. Therefore, any cause of action under Section 1983 arising out of the two entrapment attempts is not time barred.

Accordingly, we AFFIRM the district court's order granting summary judgment on the false accusation and arrest claim and the malicious prosecution claim. However, we REVERSE the district court's order granting summary judgment on the remaining claims [for entrapment, conspiracy, and harassment] and REMAND for further proceedings not inconsistent with this opinion.

*Id*. at 716-17 (footnotes omitted) (emphasis supplied).

Additionally, the cases cited in *Mullinax* as authoritative also show the error

in Plaintiffs' arguments. *Calhoun v. Alabama ABC Board*, 705 F.2d 422, favors

the Defendants, as it stands for the proposition that, in a cause of action for race

discrimination, no claim accrues until the plaintiffs had notice that the license denial <u>was motivated by race</u> (a required element of their claim). In *Lavellee v. Listi*, 611 F.2d 1129, the former Fifth Circuit found that it lacked sufficient facts to know whether the plaintiff knew or should have known that the pains in his back were not the normal result of a spinal tap and so the district court erred on that record in finding his medical malpractice claim accrued on the date of the spinal tap. The facts of Plaintiffs' false imprisonment claims were apparent on the date of Plaintiffs' arrest.[34]

Alternatively, Plaintiffs indicate that April 9, 2015, the date on which Plaintiffs' criminal charges were *nolle prossed*, is the appropriate accrual date.[35] (Doc. 51 at 40-42). This argument is barred by the holding in *Wallace* and accordingly fails.

Finally, Plaintiffs maintain that their evidence creates a triable issue as to when their federal claims against Defendants accrued under § 6-2-38(*l*). (Doc. 51

---

[34] There was more than one arrest, but all occurred in 2012, and thus were outside the two-year limitations period.

[35] Defendants concede that April 9, 2015, is the correct date for the accrual of Plaintiffs' malicious prosecution claim. (*See* Doc. 35 at 14 ("Only malicious prosecution claims accrue when the plaintiff prevails on the charges."); *id.* at 15 (disputing April 9, 2015, as the accrual date "except [for] the malicious prosecution claim, which indisputably accrued then because that was the date Plaintiffs prevailed on the charges")). Defendants do, however, offer other reasons in support of dismissing Plaintiffs' malicious prosecution claim. The court addresses those arguments later in this opinion.

at 45-46). However, this is simply a repetition of their argument that they needed to know about the conspiracy in order to have brought their false imprisonment claims. The Court again rejects this argument. Pursuant to *Wallace*, absent equitable tolling, "the statute of limitations upon a § 1983 claim seeking damages for a false arrest in violation of the Fourth Amendment, where the arrest is followed by criminal proceedings, <u>begins to run</u> [*i.e.* accrues] <u>at the time the claimant becomes detained pursuant to legal process</u>." *Wallace v. Kato*, 549 U.S. at 397, 127 S. Ct. at 1100 ) (emphasis supplied).[36]

In this case, that period began to run when the Plaintiffs were held pursuant to legal process: August 24, 2012. As that date was more than two years before the date that this action was filed, Plaintiffs' federal false imprisonment claims are due to be dismissed with prejudice as time-barred, unless the Plaintiffs are entitled to have some portion of that two-year period stayed based on equitable tolling.

b.    *Equitable tolling does not apply*

The Court now examines whether Plaintiffs' federal false imprisonment claims are saved by equitable tolling, as alternatively argued by Plaintiffs. (Doc.

---

[36] In *Wallace*, the Supreme Court recognized equitable tolling's impact on the running of the statute of limitations (which is a matter of state law), not on the accrual of the action (which is a matter of federal law), and carved out from the statutory limitations period the time during which the plaintiff was a minor. *Id.* ("Since in the present case [the cause of action accrued] (with appropriate tolling for the plaintiff's minority) more than two years before the complaint was filed, the suit was out of time.")

51 at 42-45).[37]

All facts required to assert Plaintiffs' false imprisonment claims were apparent on August 24, 2012. The Court acknowledges that, when the basis for a civil rights action is not apparent at the time of the wrongful act, the claim does not accrue until the plaintiff discovers, or with the exercise of due diligence should have discovered, the factual basis for the cause of action. *See Calhoun v. Alabama Alcoholic Beverage Control Bd.*, 705 F.2d 422 (discussed *supra*). Thus, equitable tolling delays the date on which the statute of limitations begins to run until such time that the plaintiff is <u>first put on notice of the conduct which is the basis for the action</u>. In *Calhoun*, that "conduct" was <u>not</u> denial of the plaintiffs' application for a liquor license; it was denying that application <u>based on the plaintiffs' race</u>. (*Id*.).

Here, the Plaintiffs could have brought their false imprisonment claims on August 24, 2012, the date they were arrested (and also the date on which they were released). Unlike *Calhoun*, where no cause of action existed until the plaintiffs had knowledge of racial bias, the Plaintiffs did not need to know of the existence of a conspiracy in order to bring their § 1983 false imprisonment claims. Those claims are not saved by equitable tolling. Accordingly, all Defendants will be granted

_____

[37] The Court does not address statutory tolling, as Plaintiffs have not argued that it should apply.

summary judgment as to Counts One, Four, and Five and those claims will be dismissed with prejudice as barred by the statute of limitations.[38] Plaintiffs' state law claim for false imprisonment (Count Nine) is, however, subject to a six-year statute of limitations. Accordingly, Defendants' motion will be denied as to Count Nine to the extent that such motion is based on the statute of limitations.

### 3.    Plaintiffs' abuse of process claims are not time-barred

In Counts Three and Twelve, Plaintiffs allege a claim for abuse of process. These claims remain for analysis only as to the Individual Defendants in their individual capacities.[39] "The elements of the tort of abuse of process are 1) the existence of an ulterior purpose, 2) a wrongful use of process, and 3) malice." *C.C. & J., Inc. v. Hagood*, 711 So. 2d 947, 950 (Ala. 1998).[40] In contradistinction to Plaintiffs' false imprisonment counts, Defendants have failed to show, and Plaintiffs have brought forth affirmative evidence showing that, prior to 2015, they lacked knowledge of the essential element of malice. Accordingly, and consistent

---

[38] With this determination, the court finds that all claims against the City are due to be dismissed with prejudice either as abandoned or as time-barred (or both). Accordingly, the City is due to be **DISMISSED** from this action.

[39] As explained *supra*, Plaintiffs have abandoned this claim against the City and against the individual Defendants in their official capacities.

[40] The element of malice means that abuse of process is an intentional tort. Accordingly, as explained *supra*, Plaintiffs have abandoned this claim against the City and against the Individual Defendants in their official capacities.

with *Calhoun* and this court's prior analysis, on this evidence, Plaintiffs' abuse of process claims did not accrue prior to 2015. Accordingly, they are not time-barred.

**4.    Plaintiffs' conspiracy claims are dismissed to the same extent as the underlying torts have been dismissed**

In Counts Eight and Sixteen, Plaintiffs assert claims for conspiracy. These claims remain only to the extent asserted against the Individual Defendants in their individual capacities.[41] As to a civil conspiracy claim brought under 42 U.S.C. § 1985, the Supreme Court has explained that "[c]onspiracy requires an agreement — and in particular an agreement to do an unlawful act — between or among two or more separate persons." *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1867, 198 L. Ed. 2d 290 (2017) A claim for civil conspiracy under Alabama law is no different — it requires proof of "a combination of two or more persons to accomplish an unlawful end or to accomplish a lawful end by unlawful means." *Hooper v. Columbus Regional Healthcare System, Inc.*, 956 So. 2d 1135, 1141 (Ala. 2006) (citations omitted). Further, "[a] civil conspiracy is not an independent cause of action." *Funliner of Alabama, L.L.C. v. Pickard*, 873 So. 2d 198, 211 (Ala. 2003) (citing *Drill Parts and Service Co. v. Joy Manufacturing Co.*, 619 So. 2d 1280, 1290 (Ala. 1993)). Thus, a conspiracy claim "cannot exist in the absence of an

_____

[41] As explained *supra*, Plaintiffs have abandoned this claim against the City and against the individual Defendants in their official capacities.

underlying tort." *Goolesby v. Koch Farms, LLC*, 955 So. 2d 422, 430 (Ala. 2006) (citing *Avis Rent a Car Sys., Inc. v. Heilman*, 876 So. 2d 1111, 1124 (Ala. 2003)). Accordingly, Plaintiffs' conspiracy claims (Counts Eight and Sixteen) are due to be dismissed with prejudice as to any underlying tort which is dismissed with prejudice.

The only underlying torts which have not been dismissed are against the Individual Defendants in their individual capacities. Even against the Individual Defendants in their individual capacities, all underlying tort claims have been dismissed as abandoned or time-barred except the torts of malicious prosecution (Counts Two and Eleven), state law false imprisonment (Count Nine) and abuse of process (Counts Three and Twelve). Accordingly, the court finds that all conspiracy claims are limited to conspiracy by the Individual Defendants acting in their individual capacities to commit the tort of malicious prosecution and/or to commit the tort of state law false imprisonment and/or to commit the tort of abuse of process. The Defendants' motion is hereby **GRANTED** as to Counts Eight and Sixteen, and such counts are hereby **DISMISSED WITH PREJUDICE**, except to the extent that Plaintiffs have alleged, in such counts, conspiracy claims against the Individual Defendants to maliciously prosecute the Plaintiffs, and/or to commit the tort of state law false imprisonment, and/or to abuse process against them.

## C.   Remaining Claims

The court now turns to the Defendants' motion for summary judgment as to the Plaintiffs' remaining claims

### 1.   Plaintiffs' remaining federal claims fail

Plaintiffs' remaining federal claims are brought under 42 U.S.C. § 1983 and 1985 (by and through § 1983). A necessary element of each of these claims is that the Individual Defendants were "acting under color of law." 42 U.S.C. § 1983. "Section 1983 does not federalize all torts or other deprivations of rights committed by a person who is a law enforcement officer or other government agent." *Butler v. Sheriff of Palm Beach Cnty.*, 685 F.3d 1261, 1265 (11th Cir.2012). Individual Defendants have pointed out the total absence of such evidence, and this court agrees.

Viewed in the light most favorable to the Plaintiffs, as it must be, the evidence fails to show that <u>any</u> complained-of acts of the Individual Defendants were committed <u>in the performance of any actual or pretended duty that was authorized or appeared to be authorized</u> by their positions as employees of the City. More specifically, in opposing summary judgment, Plaintiffs have relied upon the Individual Defendants' positions as City employees, together with statements contained in an affidavit of Mr. Fluker. (Doc. 51 at 29-33).

However, merely because the Individual Defendants and Mr. Fluker all were employed by the City in 2012 does not necessarily establish that <u>any</u> of the Individual Defendants were acting under color of state law in taking the complained-of actions. *United States v. Classic*, 313 U.S. 299, 326, 61 S. Ct. 1031, 1043, 85 L.Ed. 1368 (1941), laid down the rule that "misuse of power, possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law, is action taken 'under color of' state law." That the acts must be under "pretense" of law was stressed in *Screws v. United States*, 325 U.S. 91, p. 111, 65 S. Ct. 1031, p. 1040, 89 L.Ed. 1495 (1945), wherein it was noted that "acts of officers in the ambit of their personal pursuits are plainly excluded."

To establish that the Individual Defendants' acts were under "pretense" of law (as opposed to based on personal motivations), Plaintiffs have relied solely upon Mr. Fluker's affidavit. (Doc. 51 at 29-33). They appear to argue that the Individual Defendants' acts were under "pretense" of law because promises and/or threats were made to Mr. Fluker's employment by the City. However, Plaintiffs have failed to point out any <u>evidence</u> that these Individual Defendants could (or appeared to be able to) cause Mr. Fluker's conditions of employment to become better or worse.

Plaintiffs improperly cite to the <u>totality</u> of Mr. Fluker's affidavit as evidence supporting their contention.[42] However, the only portion of that affidavit regarding promises or threats by Individual Defendants to induce Mr. Fluker to "set up" the Plaintiffs (and thereby were, according to Plaintiffs, acting under color of law) are two sentences in that affidavit where he states:

> 13. In the meeting at Bob Dean's office in August, Darryl Abernathy asked me to set up Ronald Heining and his son, Tyler Heining. Darryl Abernathy said if I would do that he would give me a pay raise and pay me comp time.

(Doc. 5-1 at 2 ¶ 13).[43]

Initially, the Court notes that this statement was made <u>only</u> by Abernathy. Although Abernathy was the Assistant Street Superintendent for the public works department of the City at the time of the statement, and Mr. Fluker was working at that time as a laborer for the City's public works department (Doc. 38-3 at 2, ¶¶ 3-4), Plaintiffs point to <u>no evidence</u> that Abernathy in fact could give Mr. Fluker a pay raise and pay him comp time if he "set up" Plaintiffs, or that Mr. Fluker even <u>thought</u> Abernathy could do so. And, Plaintiffs offer <u>no evidence</u> of any promise or threat by <u>either</u> of the other Individual Defendants.

---

[42] *See* Doc. 51 at 29-31, repeatedly citing "Doc. 38-3/pp/2-4".

[43] The Court purposely omits reference to ¶ 12 of Mr. Fluker's affidavit, because it does not even reference either Plaintiff. Rather, it references Councilman Little, <u>who is not a party</u> to this action.

At summary judgment, Plaintiffs must come forward with evidence of each necessary element of their claims. That these Individual Defendants were acting "under color of" law is a necessary element of Plaintiffs' federal claims, which are brought under 42 USC §§ 1983 and 1985. Based on this lack of evidence to support this required element, Defendants' motion for summary judgment is due to be granted and Plaintiffs' claims under Counts Two, Three, and Eight are also due to be dismissed with prejudice as to the Individual Defendants (who are the sole remaining defendants under such counts).

### 2. Discretionary dismissal of Plaintiffs' remaining state claims

In seeking a dismissal of Plaintiffs' state law counts, Defendants preliminarily contend that "because the §§ 1983 and 1985(3) claims should be dismissed with prejudice, this Court should dismiss the Alabama law tort claims asserted by Plaintiff without prejudice pursuant to 28 U.S.C. § 1367(c)(3), which gives this Court authority to 'decline to exercise supplemental jurisdiction over [state law] claim ... if the district court has dismissed all claims over which it has original jurisdiction.'" (Doc. 35 at 31-32). Plaintiffs have not argued against such a dismissal. Accordingly, Defendants' Motion is hereby **GRANTED** and Plaintiffs' remaining state law claims for false imprisonment (Count Nine), for

malicious prosecution (Count Eleven), for abuse of process (Count Twelve), and for conspiracy to commit these torts (Count Sixteen) will be dismissed without prejudice.

## IV.   CONCLUSION

For the reasons set out above, the Defendants' Motion is hereby due to be **GRANTED**. A separate final judgment order will be entered.

**DONE** and **ORDERED** this the 26th day of September, 2017.

**VIRGINIA EMERSON HOPKINS**
United States District Judge